IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

LEXINGTON NATIONAL BAIL
SERVICES, INC., BRASWELL
SURETY SERVICES, INC., and
GLOBAL SURETIES, INC.,

    Plaintiffs,

v.

GERALD SPENCE AND DONALD
BLACKWELL,

    Defendants.

CIVIL ACTION NO.
1:03-CV-2904-JEC

### O R D E R  &  O P I N I O N

This case is presently before the Court on plaintiffs' Motion to Enforce Settlement Agreement and Enter Judgment [56]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that plaintiffs' Motion to Enforce Settlement Agreement and Enter Judgment [56] should be **DENIED**.

### BACKGROUND

The present dispute arose from pretrial settlement negotiations between counsel for defendant Donald Blackwell and counsel for plaintiffs Lexington National Bail Services, Inc., Braswell Surety Services, Inc., and Global Sureties, Inc. On September 25, 2003, plaintiffs filed a breach of contract complaint against defendant

Blackwell and another individual, Gerald Spence. (Compl. [1] at ¶¶ 22-39.) Trial of plaintiffs' case against defendant Blackwell was eventually scheduled for Tuesday, May 30, 2006. (Letter from Bates to Wright, Christy, and Graham of 5/3/06 [49].) In the days immediately before trial was scheduled to begin, counsel for the parties engaged in negotiations aimed at settling the case. (Graham Aff. [56] at ¶ 3; Def. Blackwell's Resp. Pl.'s Mot. Enf. Settl. Agm't. ("DRPMESA") [57] at ¶ 2.) While the parties now dispute the factual progression and ultimate successfulness of these negotiations, the case was reported to this Court as settled on Tuesday, May 30, 2006. (Order of 5/30/06 [51].)

It is undisputed that no money has changed hands between the parties pursuant to any settlement agreement that they may have reached between May 26, 2006 and May 30, 2006. (Br. Supp. Pl.'s Mot. Enf. Settl. Agm't. and Enter J. ("BSPMESA") [56] at 4-6; DRPMESA at ¶¶ 1-7.) Plaintiffs contend that the parties reached an agreement and that defendant's failure to make any installment payments constituted a default pursuant to the terms of said agreement. (Pl.'s Mot. Enf. Settl. Agm't. and Enter J. ("PMESA") [56] at 1-2.) Defendant contends that the parties failed to agree on an essential term, therefore nullifying any agreement that might otherwise have been reached as well as any obligations pursuant thereto. (DRPMESA at 3.) Plaintiffs have filed a motion to enforce the settlement agreement and enter judgment, currently pending before this Court.

2

(PMESA.)

Many of the facts surrounding the parties' settlement negotiations are not in dispute. First, the parties agree that during the week before trial was scheduled to begin, counsel for both sides discussed settling the case. (Graham Aff. at ¶ 3; DRPMESA at ¶ 2.) Moreover, they agree that on or about May 26, 2006, counsel for the parties orally agreed to the following settlement terms: $40,000.00 payable from defendant Blackwell to plaintiffs over 18 years and 4 months at an interest rate of 6%. (DRPMESA at ¶ 4; Graham Aff. at ¶ 5.)

It is also undisputed that, on May 27, 2006, Mr. Jason W. Graham, counsel for the plaintiffs, e-mailed a summary of the settlement terms to defense counsel, Mr. Derek Wright. (Exs. A and B to BSPMESA.) These terms included a $40,000.00 principal payable from defendant to plaintiffs "over ___ years with an interest rate of 6% payable at the rate of $300 per month, beginning on June 1, 2006 until paid in full." (Ex. A to BSPMESA.) The e-mail further indicated that "[i]f any default is not cured within 5 business days of notice, then the plaintiffs shall be entitled to judgment against the defendant in the amount of $120,000.00 less any payments received by the plaintiffs through the date of defendant's default in payment." (*Id.*)

Several days after receiving the foregoing e-mail, Mr. Wright sent a reply. (Ex. C to BSPMESA.) This e-mail reply included a

3

AO 72A
(Rev.8/82)

revised version of the settlement, the terms of which differed from Mr. Graham's original draft in several respects: first, the default period was increased from five (5) to thirty (30) days; second, notice of default was to be directed to defendant himself, with Mr. Wright only receiving notice as a courtesy; third, some basic language concerning the confidentiality and finality of the settlement was added; fourth, the date upon which the payments were to start was changed to July 1, 2006; and lastly, the default sum was changed from $120,000.00 to $92,825.00. (*Id.*)

At 8:43 PM that evening, Mr. Graham sent Mr. Wright a second revised version of the agreement. (Ex. D to BSPMESA.) Mr. Graham accepted Mr. Wright's change as to the date upon which the payments were to commence, as well as Mr. Wright's clauses concerning the confidentiality and finality of the settlement and the parties upon whom notice of default must be served. (*Id.*) As a compromise, Mr. Graham also agreed to change the default period to fifteen (15) days. (*Id.*) However, Mr. Graham expressly refused to change the default sum from $120,000.00 to $92,825.00. (*Id.*) Mr. Graham indicated that "the $120K (which only comes into play if [Defendant Blackwell] defaults) represents everything we were seeking at trial (as we discussed) including prejudgment interest at the legal rate and attorneys fees. I know I said $120K during our discussions. That was the deal." (*Id.*) Mr. Wright did not reply to Mr. Graham's second message. (BSPMESA at 4.)

4

The morning after Mr. Graham's second revised settlement agreement was e-mailed to Mr. Wright, Mr. Wright telephoned the Clerk of this Court and reported that the case had settled. (Order of 5/30/06 [51].) An order was issued acknowledging that settlement had been reached, but that "documentation and approval of the settlement agreement will require some extended time for completion." (*Id.*) The order granted the parties ninety (90) days to finalize the settlement, at which time the case would be dismissed. (*Id.*) The order also granted both parties the right to reopen the action if settlement was not fully consummated within ninety days. (*Id.*)

Plaintiffs' evidence indicates that, in the month after reporting the case as settled to this Court, Mr. Wright failed to respond to Mr. Graham's attempts to consummate the settlement. (BSPMESA at 4-6; Graham Aff. at ¶¶ 11-16.) Mr. Graham sent Mr. Wright at least five (5) e-mails seeking to finalize the settlement agreement. (Graham Aff. at ¶¶ 11-14.) Mr. Wright did not reply to any of these e-mails. (*Id.*) Mr. Graham's affidavit also indicates that he left "several voicemail messages on Mr. Wright's office and cell phone numbers," to which no reply was received. (*Id.* at ¶ 15.) Additionally, Mr. Graham sent Mr. Wright a letter via facsimile and Federal Express notifying Mr. Wright that plaintiffs would file a motion to enforce settlement agreement if no reply was received. (*Id.*) Again, Mr. Wright failed to reply. (*Id.*) Neither defendant nor defendant's counsel have offered any evidence disputing these

5

facts, nor any explanation for Mr. Wright's conduct.

On July 18, 2006, Mr. Graham sent both defendant and defendant's counsel a letter notifying them that defendant had "failed to pay the July 1, 2006 installment." (*Id.* at 16; Ex. K to BSPMESA.) Moreover, Mr. Graham indicated that unless this default were cured within fifteen (15) days, plaintiffs would be entitled to a $120,000.00 judgment against defendant and that a motion to enforce would be filed with this Court pursuant thereto. (Ex. K to BSPMESA at 1.) Mr. Graham's July 18, 2006 letter indicates that his contentions were based upon an oral settlement agreement reached between himself and Mr. Wright on behalf of their respective clients. (*Id.*) The next day, Mr. Wright responded via facsimile and U.S. Regular Mail. (Graham Aff. at ¶ 17; Ex. L to BSPMESA.) In this response, he contended that no payment was due and that a motion to enforce the settlement was groundless because no settlement agreement had ever been "finalized and agreed to." (Ex. L to BSPMESA at 2.) Specifically, Mr. Wright indicated that failure to agree upon the default sum precluded the existence of any settlement agreement. (*Id.*)

In the fifteen days following defendant's receipt of plaintiffs' notice of default, defendant did not make any payments pursuant to the purported settlement agreement. (Graham Aff. at ¶ 18.) On August 11, 2006, plaintiffs filed a motion to enforce settlement agreement and to enter judgment in their favor. (PMESA at 1.)

6

Plaintiffs argue that, pursuant to the settlement agreement, this Court should enter judgment against defendant in the amount of $120,000.00, plus $2,750 for the attorney's fees incurred in bringing the motion. (BSPMESA at 9.) In his reply, defendant argues that no enforceable settlement agreement exists because Mr. Wright and Mr. Graham failed to agree upon the default sum. (DRPMESA at 3.) Defendant accordingly asks the court to deny the motion to enforce the settlement agreement and to place the matter back on the court's trial calendar. (*Id.*)

## DISCUSSION

### I.  Standard for Motion to Enforce Settlement Agreement

A motion to enforce a settlement agreement is properly analyzed using the same framework as a motion for summary judgment. *See Superglass Windshield Repair, Inc. v. Mitchell*, 233 Ga. App. 200, 504 S.E. 2d 38, 39 (Ga. App. 1998). Summary judgment is not properly viewed as a device that a trial court may, in its discretion, implement in lieu of a trial on the merits. Instead, Rule 56 of the Federal Rules of Civil Procedure *mandates* the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of *every* element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In such a situation, there can be no genuine issue as to any material fact, as a complete failure of proof concerning an essential element of the

nonmoving party's case necessarily renders all other facts immaterial. *Id.* at 322-23.

The movant bears the initial responsibility of asserting the basis for his motion. *Id.* at 323; *Apcoa, Inc. v. Fidelity Nat'l Bank*, 906 F.2d 610, 611 (11th Cir. 1990). The movant is not required to negate his opponent's claim, however. The movant may discharge his burden by merely "'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. After the movant has carried his burden, the nonmoving party is then required to "go beyond the pleadings" and present competent evidence[1] designating "'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting FED. R. CIV. P. 56(e)). While the court is to view all evidence and factual inferences in a light most favorable to the nonmoving party, *Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

A fact is material when it is identified as such by the controlling substantive law. *Id.* at 248. An issue is genuine when the

---

[1] The nonmoving party may meet its burden through affidavit and deposition testimony, answers to interrogatories, and the like. *Celotex*, 477 U.S. at 324.

evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* at 249-50. The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (citations omitted). An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." *Anderson,* 477 U.S. at 249-50. Thus, to survive a motion for summary judgment, the nonmoving party must come forward with specific evidence of *every* element material to that party's case so as to create a genuine issue for trial.

## II. Plaintiffs' Motion to Enforce Settlement Agreement and to Enter Judgment is Denied

The construction and enforcement of agreements in settlement of pending lawsuits is generally governed by principles of state contract law. *Hayes v. National Serv. Indus.*, 196 F.3d 1252, 1254 (11th Cir. 1999) (citing *Blum v. Morgan Guar. Trust Co. of N.Y.*, 709 F.2d 1463, 1467 (11th Cir. 1983). Under Georgia law, a settlement agreement must meet the same requisites of formation and enforceability as any other contract. *Wong v. Bailey*, 752 F.2d 619, 621 (11th Cir. 1985) (citing *McKie v. McKie*, 213 Ga. 582, 583, 100 S.E.2d 580, 582-83 (Ga. App. 1957)).

As a preliminary matter, under Georgia law, an attorney's consent to a settlement agreement is generally binding upon his client. *Id.* (citing *Stone Mtn. Confederate Monumental Ass'n v. Smith*, 170 Ga. 515, 521, 153 S.E. 209, 211 (Ga. 1930)). Accordingly, the Court treats any agreement reached between Messrs. Graham and Wright as binding on their respective clients.

Moreover, under Georgia law, no valid contract exists until the contracting parties have agreed to all essential terms. *See* O.C.G.A. § 13-3-2 (Westlaw 2006); *see also Bridges v. Bridges*, 349 S.E.2d 172, 174 (Ga. 1986). Default terms are generally essential to agreements involving installment payments. *See, e.g., Drake v. Wallace*, 259 Ga. App. 111, \_\_\_\_\_, 576 S.E.2d 87, 90 (Ga. Ct. App. 2003)(no agreement existed as to all essential terms where the putative promisor struck the default, interest and cost provisions from a promissory note before signing, and there is no indication that the promisee accepted these changes). Further, in the present case, the value of the default sum was discussed during Messrs. Graham and Wright's oral negotiations. (BSPMESA at 2-3.) Also, neither party argues that the default sum was not an essential term of the settlement agreement. Because the default sum constitutes an essential term, the Court will not enforce the settlement agreement unless the parties or their attorneys agreed to the default sum.

Plaintiffs seemingly advocate two distinct theories by which the default sum was agreed-upon. First, they urge that Mr. Graham and

10

Mr. Wright reached an oral agreement concerning the default sum on or about May 26, 2006. (BSPMESA at 8.) In Georgia, an oral agreement is legal and equally as enforceable as a written contract. *Turner v. Clark & Clark*, 158 Ga. App. 79, 81, 279 S.E.2d 323, 325 (Ga. App. 1981). Plaintiffs, citing Mr. Graham's affidavit, claim that the oral settlement offer, which Mr. Wright "unconditionally" accepted, included the $120,000.00 default sum. (Graham Aff. at ¶ 7.) Plaintiffs argue that $120,000.00 was the only value Messrs. Graham and Wright discussed during their negotiations; therefore, when Mr. Wright unconditionally accepted the settlement, he also accepted the $120,000.00 figure. (*Id.*)

However, defendant contends that an oral agreement was only reached concerning the principal settlement amount, payment schedule, and attending interest rate. (DRPMESA at ¶¶ 5-6.) He claims that the $120,000 figure was merely "discussed as a matter of context as to the parties['] posture towards compromise," and that the actual default sum was one of the remaining details that Messrs. Graham and Wright agreed that they would iron out in the future. (*Id.*) Defendant's position is supported by the e-mails exchanged between Messrs. Graham and Wright, which clearly evince a lack of agreement as to the default sum in the days following the purported oral agreement. (Exs. A-L to BSPMESA.)

Under Georgia law, "a contract to enter into a contract in the future is of no effect." *Coldmatic Refrigeration of Can. v. Hess*,

11

257 Ga. App. 753, 754, 572 S.E.2d 6, 7 (Ga. App. 2002) (citing *Hartrampf v. Citizens & S. Realty Investors*, 157 Ga. App., 879, 881(1), 278 S.E.2d 750 (Ga. App. 1981). Therefore, "agreements to agree" on essential terms are not enforceable. *Henry v. Blankenship*, 275 Ga. App. 658, 600, 621 S.E.2d 601, 605 (Ga. App. 2005) (citing *Smith Serv. Oil Co. v. Parker*, 250 Ga. App. 270, 549 S.E.2d 485 (Ga. App. 2001). Messrs. Graham and Wright's oral agreement to iron-out the default sum at some point in the future constitutes an unenforceable "agreement to agree." Because the default sum is an essential term of the parties' settlement agreement, any failure to agree upon the default sum would render the entire settlement agreement unenforceable. The Court, therefore, concludes that whether Mr. Wright unconditionally accepted Mr. Graham's settlement offer is materially-significant to the present dispute.

Plaintiffs also advocate a second theory by which they contend an agreement was reached as to the default sum. They argue that the parties must have agreed to the default sum because Mr. Wright reported the case as settled to this Court on May 30, 2006. (BSPMESA at 9.) In Georgia, assent to the terms of an agreement may be implied in certain circumstances. *Smith v. Hornbuckle*, 140 Ga. App. 871, 874, 232 S.E.2d 149, 153 (Ga. Ct. App. 1977). Moreover, conduct inconsistent with a refusal of the terms may raise a presumption of assent. *Id.* Seemingly, plaintiffs have argued that by reporting the case as settled, Mr. Wright's conduct raises the presumption of his

assent to the $120,000.00 default sum.

However, a closer examination of Georgia contract law belies this argument. Specifically, our examination of Georgia contract law reveals no indication that the *Hornbuckle* implied assent rule is satisfied when a case is reported to a presiding court as settled. In fact, the few cases in which an implied assent rule have been considered concern whether tender, acceptance, and retention of payment pursuant to a settlement agreement raises the presumption of assent to the settlement's terms. *See, e.g.*, *Wong v. Bailey*, 752 F.2d at 620 (C.A. Ga. 1985); *Sam Finley v. Barnes*, 249 S.E.2d 147, 148 (Ga. App. 1978); *American Oil v. Studstill*, 207 S.E.2d 553, 555 (Ga. App. 1974). The Court is reluctant to extend the *Hornbuckle* implied assent rule beyond these limited instances and, therefore, concludes that it is inapplicable to the case *sub judice*.

The Court concludes that a genuine issue of material fact exists as to whether Messrs. Graham and Wright reached an oral agreement as to the default sum. Further, the Court concludes that the *Hornbuckle* implied assent rule fails to provide an adequate legal basis for plaintiffs' motion. Accordingly, the Court denies plaintiffs' Motion to Enforce Settlement Agreement and Enter Judgment [56].

### III. Sanctions Against Mr. Wright Pursuant to 28 U.S.C. § 1927

28 U.S.C. § 1927 provides that:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and

13

> vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927 (Westlaw 2006). This statute was designed to sanction attorneys who "willfully abuse the judicial process by conduct tantamount to bad faith." *Schwartz v. Millon Air. Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003) (*citing Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1544 (11th Cir. 1993), quoting *Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991)). Under § 1927, attorneys who engage in unreasonable and vexatious conduct that multiplies court proceedings may be sanctioned in an amount not exceeding the costs occasioned by the objectionable conduct.[2] *Schwartz*, 341 F.3d at 1225 (*citing McMahan v. Toto*, 256 F.3d 1120, 1128 (11th Cir. 2001), *amended on reh'g*, 311 F.3d 1077 (11th Cir. 2002)). Most importantly, bad faith is the "touchstone" of § 1927 sanctions. *Id.*

As reflected by the evidence currently before the Court, Mr. Wright's behavior in the case *sub judice* reeks of bad faith. Specifically, his actions in reporting this case as settled were curious given his current contention that no settlement agreement was ever reached and given his unresponsiveness to Mr. Graham's earlier communications. His actions appear more dubious when one

---

[2] A District Court may impose § 1927 sanctions on a *sua sponte* basis. *See Hashemi v. Campaigner Publ'ns, Inc.*, 784 F.2d 1581, 1584 (11th Cir. 1986).

14

considers the effect they have had on the present dispute: because Mr. Wright reported the case as settled, defendant avoided the previously-scheduled trial, and yet, for the reasons discussed above, remains unsaddled by settlement obligations.

By necessitating numerous unanswered communications, a motion to enforce, multiple briefs and affidavits, and the foregoing order, Mr. Wright's conduct has clearly multiplied the immediate proceedings. If Mr. Wright, in an attempt to delay trial, reported this case as settled while instead believing no settlement had been reached, his actions would likewise constitute classic bad faith conduct. Therefore, unless some other explanation be had, Mr. Wright's conduct is sanctionable under § 1927.

Sanctions imposed pursuant to § 1927 may not exceed the costs occasioned by the sanctionable conduct. *Schwartz*, 341 F.3d at 1225. (citing *McMahan v. Toto*, 256 F.3d 1120, 1128 (11th Cir. 2001), amended on reh'g, 311 F.3d 1077 (11th Cir. 2002)). Here, these costs amount to at least $2,750.00, which are the reasonable attorney's fees incurred by plaintiffs in bringing their motion to enforce the settlement agreement. (Graham Aff. at ¶ 19-22). At a minimum, Mr. Wright will personally be required to pay these fees.

The Court, accordingly, orders Mr. Wright to **SHOW CAUSE** why he should not be sanctioned $2,750.00, in addition to any other costs or fees that plaintiffs may have incurred since the filing of the present motion, pursuant to § 1927. Further, Mr. Wright should be

prepared to show cause why this Court should not refer an ethics complaint to this district's disciplinary panel, as a result of what appears to be a premeditated lie by Mr. Wright to the Court. This hearing is set for **Tuesday, April 24, 2007, 3:00 p.m.**, Courtroom 2107.[3]

### CONCLUSION

For the foregoing reasons, the Court **DENIES** plaintiffs' Motion to Enforce Settlement Agreement and to Enter Judgment [56]; the Court further orders that defendant's counsel, Mr. Derek Wright, show cause, at a hearing set for **Tuesday, April 24, 2007, 3:00 p.m.**, why he should not be sanctioned for all costs incurred by plaintiff, as a result of Mr. Wright's misstatement to the Court, pursuant to 28 U.S.C. § 1927. This matter will be placed again on the Court's trial calendar after the show cause hearing has been concluded.

SO ORDERED, this 28 day of March, 2007.

JULIE E. CARNES
UNITED STATES DISTRICT JUDGE

---

[3] Plaintiff's counsel shall be present and Mr. Wright will be responsible for compensating plaintiff's counsel for this appearance.

16